# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERIKA RILEY-CORNUTT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-00454-MHH** |
| | } | |
| **THE BOARD OF THE TRUSTEES OF THE UNIVERSITY OF ALABAMA,** | } } } } | |
| | } | |
| **Defendant.** | } | |

| | | |
|---|---|---|
| **ERIKA RILEY-CORNUTT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  2:24-cv-01164-MHH** |
| **v.** | } | |
| | } | |
| **THE BOARD OF THE TRUSTEES OF THE UNIVERSITY OF ALABAMA, UAB HOSPITAL,** | } } } } } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

Ms. Riley-Cornutt has requested permission to file a second amended complaint against the Board of Trustees of the University of Alabama.  (Doc. 72).[1]

_____

[1] In her *pro se* pleadings in this case, Ms. Riley-Cornett has named as defendants the Board of Trustees of the University of Alabama and UAB Hospital.  (*See*, *e.g.*, Doc. 60.  The Board "'owns University of Alabama Hospital in Birmingham, Alabama, an operating division of the University of Alabama at Birmingham, and various other entities and assets engaged in the delivery of healthcare services.'"  *See Health Care Auth. for Baptist Health v. Davis*, 158 So. 3d 397, 401

1

Ms. Riley-Cornutt seeks to assert Title VII claims against the Board for race discrimination, retaliation, and hostile work environment; discrimination claims under 42 U.S.C. §§ 1981 and 1983; and a failure to accommodate claim under the Americans with Disabilities Act. (Doc. 72-1, pp. 33–43, ¶¶ 236–317). Because the disposition of Ms. Riley-Cornutt's motion to amend will help resolve other pending motions in this case, the Court begins this order with an analysis of the motion to amend and then addresses the orders impacted by the Court's ruling.[2]

"A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he grant or denial of an opportunity to

---

(Ala. 2013). Therefore, the Board is the proper defendant in this action. Mr. Riley-Cornutt seems to recognize this in her proposed second amended complaint. (Doc. 72-1).

On August 29, 2024, the Court issued an order consolidating Ms. Riley-Cornutt's two lawsuits, Case No.: 2:23-cv-00454-MHH and Case No.: 2:24-cv-01164-MHH. In this order, unless otherwise noted, the Court cites the documents in the lead case, Case No.: 2:23-cv-00454-MHH.

[2] The Board has filed a motion to strike and a partial motion to dismiss Ms. Riley-Cornutt's first amended complaint, (Doc. 61). The Board also has filed a motion to vacate the scheduling order in case no. 2:23-cv-00454, to stay rulings on pending motions, and to amend the scheduling order in case: 2:24-cv-01164. (Doc. 76). Ms. Riley-Cornutt had filed an amended motion to reopen discovery. (Doc. 64).

amend is within the discretion of the [d]istrict [c]ourt." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A district court may deny leave to amend if "(1) there has been undue delay or bad faith; (2) allowing an amendment would cause undue prejudice to the opposing party; or (3) an amendment would be futile." *Ray v. Equifax Info. Servs., LLC*, 327 Fed. Appx. 819, 822 (11th Cir. 2009). "[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). To determine whether the claims Ms. Riley-Cornutt asserts in her proposed second amended complaint are futile, the Court views the factual allegations in the proposed amended complaint in the light most favorable to Ms. Riley-Cornutt. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019) ("We accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.").

Because Ms. Riley-Cornutt is proceeding *pro se*, her "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010).

***

Ms. Riley-Cornutt first sued the Board on April 10, 2023.  (Doc. 1).  In her initial complaint, she asserted Title VII claims for disparate treatment and retaliation. On August 24, 2024, after exhausting additional employment claims with the EEOC, Ms. Riley-Cornutt filed a new complaint against the Board asserting Title VII claims for failure to promote, unequal terms and conditions of employment, and retaliation. (Case No. 2:24-cv-01164-MHH, Doc. 1).  This Court consolidated Ms. Riley-Cornutt's lawsuits.  (Doc. 49).

On January 21, 2025, Ms. Riley-Cornutt filed her first amended complaint. (Doc. 60).  In the amended complaint, Ms. Riley-Cornutt asserted claims under the Fifth and Fourteenth Amendments, Title VII, and 42 U.S.C. 1981.  (Doc. 60, p. 2). On February 4, 2025, the Board moved to dismiss some of the claims in Ms. Riley-Cornutt's first amended complaint.  (Doc. 61).  A few months later, Ms. Riley-Cornutt asked for permission to file a second amended complaint to address the Board's arguments in its motion to dismiss.  (Doc. 65).  Ms. Riley-Cornutt did not attach her proposed amended complaint to her motion to amend.  (Doc. 65).  Before the Court ruled on the motion for leave to amend, Ms. Riley-Cornutt filed a second amended complaint.  (Doc. 68).  Because Ms. Riley-Cornutt filed the amended complaint without the Court's permission, the Court struck the second amended complaint from the record, (Doc. 70), and the Court gave Ms. Riley-Cornutt the

4

opportunity to renew her motion to amend her complaint and attach to her motion her proposed amended complaint. (Doc. 70). Ms. Riley-Cornutt then filed her pending motion for leave to file a second amended complaint. (Doc. 72).

***

In her proposed second amended complaint, Ms. Riley-Cornutt, a Black woman, alleges that she began working for the University of Alabama at Birmingham, in July 2003. (Doc. 72-1, pp. 4–5, ¶¶ 11–12). Over approximately 20 years, she advanced from a technician to a Registered Nurse in 2006 and later to Ambulatory Services Manager for Neurology in 2018. (Doc. 72-1, p. 5, ¶¶ 13–14). Ms. Riley-Cornutt contends that over her years of employment, she received positive performance appraisals, and she had no disciplinary issues. (Doc. 72-1, p. 5, ¶ 16). Ms. Riley-Cornutt asserts that the Board terminated her as Ambulatory Services Manager in July 2021 shortly after she raised concerns about discriminatory practices by her direct leader. (Doc. 72-1, p. 5, ¶ 15).

Ms. Riley-Cornutt alleges that the hospital rehired her in July 2021 as an RN Quality Improvement Coordinator in the Heart and Vascular Center, where she was assigned to a team with a white colleague, Dawn Ousley. (Doc. 72-1, p. 6, ¶¶ 19–20). Ms. Riley-Cornutt asserts that her manager, Melesia Goolsby, recognized her ability to maintain a significant workload, but Ms. Goolsby and others favored Ms. Ousley. (Doc. 72-1, p. 6, ¶ 24). For example, Director Sherri Wall, white, refused

5

to shake Ms. Riley-Cornutt's hand, citing COVID-19 protocols, but Ms. Wall hugged Ms. Ousley a short time later. (Doc. 72-1, pp. 6–7, ¶¶ 25–26).

Ms. Riley-Cornutt alleges that UAB manipulated salaries to favor white employees. (Doc. 72-1, p. 8, ¶¶ 37, 41). In October 2022, UAB raised the maximum salary for the RN QI Coordinator position from $92,206 to $98,855 to allow a white employee, Brandy George, to transfer into the role without a reduction in pay. (Doc. 72-1, pp. 8–9, ¶¶ 36–42). A white STEMI Coordinator, Emily Pentecost, earned approximately $95,000, a salary that exceeded the position's maximum and her own pay, even though Ms. Pentecost had less nursing experience and no prior quality experience. (Doc. 72-1, p. 10, ¶¶ 56–57).

In April 2023, Ms. Riley-Cornutt requested a meeting with Ms. Wall and Human Resources to address pay parity. (Doc. 72-1, p. 13, ¶¶ 77, 79). After the meeting, Ms. Riley-Cornutt was placed on a performance improvement plan. Ms. Riley-Cornutt advised HR that she disagreed with the PIP. (Doc. 72-1, p. 13, ¶¶ 84, 86). A co-worker told Ms. Riley-Cornutt that Ms. Wall discussed Ms. Riley-Cornett's complaint about pay parity with others and remarked: "She's going down." (Doc. 72-1, p. 14, ¶ 91). Ms. Riley-Cornutt felt that Ms. Wall was threatening her. (Doc. 72-1, p. 14, ¶ 92). Ms. Riley-Cornutt contends that her supervisors scrutinized her work more closely than they scrutinized the work of white employees. (Doc. 72-1, p. 16, ¶ 101).

6

In May and June of 2023, Ms. Riley-Cornutt interviewed for a new position at the hospital.  (Doc. 72-1, p. 17, ¶ 112).  In June of 2023, the hospital placed Ms. Riley-Cornutt on a PIP.  (Doc. 72-1, p. 17, ¶ 113).  As a result, Ms. Riley-Cornutt did not receive an interview for the new position even though she was highly qualified.  (Doc. 72-1, pp. 17-18, ¶¶ 114, 116).

Ms. Riley-Cornutt alleges that the stress associated with the discrimination and retaliation caused her to take FMLA leave for anxiety and depression in July and August 2023.  (Doc. 72-1, pp. 19–20, ¶¶ 129–30).  When she returned from leave, Ms. Riley-Cornutt's work was subject to heightened scrutiny and micromanagement.  (Doc. 72-1, pp. 20, 23–24, ¶¶ 132, 153, 165).  In October 2024, Ms. Riley-Cornutt transferred to the radiology department.  (Doc. 72-1, p. 27, ¶¶ 184–85).  Still, personnel from her former department interfered by passing the chain of command to report overdue assignments to her new department's executive leadership.  (Doc. 72-1, pp. 28–30, ¶¶194–95, 202–07).  Ms. Riley-Cornutt was denied a merit increase in 2024, even though she received one the previous year with comparable performance ratings.  (Doc. 72-1, pp. 30–31, ¶¶ 214, 216, 218).

Ms. Riley-Cornutt contends that her race was a motivating factor in UAB's decisions regarding her pay, disciplinary status, and the denial of promotional opportunities.  (Doc. 72-1, pp. 31–32, ¶¶223, 227).  Ms. Riley-Cornutt seeks back pay, front pay, compensatory damages, costs, and injunctive and declaratory relief.

Ms. Riley-Cornutt asks the Court to declare that the Board's employment practices violated federal anti-discrimination laws, (Doc. 72-1, p. 44, ¶ A), and to enjoin the Board from continuing these unlawful actions, (Doc. 72-1, p. 44, ¶ B). Ms. Riley-Cornutt asks for additional relief, including promotion to a director-level position or higher and an award of damages for mental anguish, lost wages, and an award of legal fees and costs. (Doc. 72-1, p. 44, ¶ C).

***

The Board contends that several of the claims Ms. Riley-Cornutt would like to pursue in her proposed second amended complaint are futile. (Doc. 75, pp. 4–5). The Court agrees.

The Board is immune from many of the claims that Ms. Riley-Cornutt would like to pursue. "[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Alabama has not consented to be sued in federal court. ALA. CONST., art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). Under the Eleventh Amendment, suits against an "arm of the State" are also barred in federal court. *Versiglio v. Bd. of Dental Exam'rs*, 686 F.3d 1290, 1291 (11th Cir. 2011). An "'arm of the State' . . . includes agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Consistent with this precedent, the Eleventh Circuit has held that state agencies are immune from

8

suits brought without their consent, and the Board is a state agency. *Eubank v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006). "The Alabama Supreme Court has also determined that the [University of Alabama Board of Trustees] is entitled to sovereign immunity as an instrumentality of the state." *Harden v. Adams*, 760 F.2d 1158, 1164 (11th Cir. 1985) (citing *Hutchinson v. Board of Trustees of University of Alabama,* 256 So.2d 279 (Ala. Civ. App. 1971)). Per *Ex parte Young*, 209 U.S. 123 (1909), plaintiffs may maintain lawsuits against state officials for prospective injunctive relief to halt ongoing violations of federal law, but the *Ex parte Young* exception does not apply "in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Ms. Riley-Cornutt has not asserted claims against a state official.

Because the Board is an arm of the State of Alabama, the Board is immune from suit in federal court absent a valid abrogation of that immunity by Congress or an express waiver by the State. With respect to her proposed ADA claim, Ms. Riley-Cornutt seeks a declaratory judgment and permanent injunction against the Board under Title II. (Doc. 72-1, p. 44, ¶ A-B). Title II of the ADA abrogates Eleventh Amendment immunity only when the alleged conduct amounts to disability discrimination in violation of Title II and the Fourteenth Amendment. *Black v. Wiginton*, 811 F.3d 1259, 1269 (11th Cir. 2016). In her proposed second amended

9

complaint, Ms. Riley-Cornutt's does not cite the Fourteenth Amendment. For this reason alone, Ms. Riley-Cornutt has not pleaded an ADA claim that survives a challenge under the Eleventh Amendment.

To assert a constitutional violation, a plaintiff must bring a claim under § 1983, but that statute does not abrogate a state's Eleventh Amendment immunity, and a state and its agencies are not "persons" subject to suit under that statute. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"). These immunity principles also apply to claims against a state or its agencies under § 1981. *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) (holding that the Eleventh Amendment immunity applies in § 1981 litigation).[3]

Therefore, Ms. Riley-Cornutt's proposed claims against the Board under the ADA and 42 U.S.C. §§ 1981 and 1983 are futile.[4]

---

[3] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981). The Fifth Circuit issued the *Sessions* decision in June 1981, so the *Sessions* decision is binding authority for this district court.

[4] The Board challenged these claims in its motion to dismiss Ms. Riley-Cornutt's first amended complaint. (Docs. 60, 61). The Board's arguments are well-taken.

The Board does not have an immunity defense to Ms. Riley-Cornutt's Title VII claims because Congress has abrogated state immunity under Title VII. Title VII prohibits employers from discriminating "against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Ms. Riley-Cornutt has adequately alleged facts to proceed with her Title VII claims for race discrimination and retaliation. Under binding precedent, Ms. Riley-Cornutt has not alleged sufficient facts to support a hostile work environment claim.

A hostile work environment claim requires evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). To prove a hostile work environment claim, a plaintiff must demonstrate that she is a member of a protected class, she was subjected to unwelcome harassment, the harassment was based on a protected characteristic, the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment, and the employer is liable for the harassment under either a theory of direct or vicarious liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In evaluating the objective

11

severity of the alleged harassment, a district court must consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Brathwaite v. Sch. Bd. of Broward Cnty., Fla.*, 763 Fed. Appx. 856, 859 (11th Cir. 2019).

Ms. Riley-Cornutt alleges that Ms. Goolsby, her white supervisor, and others subjected her to a hostile work environment through a pattern of adverse treatment. (Doc. 72-1, pp. 34–37, ¶¶ 242–62). Ms. Riley-Cornutt alleges that during meetings, Ms. Goolsby would repeatedly interrupt her, cut her off, and disregard her contributions. (Doc. 72-1, p. 35, ¶ 248). Ms. Riley-Cornutt contends that when she did not immediately assist a white colleague as directed, Ms. Goolsby subjected her work to heightened scrutiny to ensure that Ms. Riley-Cornutt would receive low performance evaluations. (Doc. 72-1, pp. 35–36, ¶¶ 250–52).

Ms. Riley-Cornutt alleges that this pattern of conduct led her to believe that Ms. Goolsby and Ms. Wall intended to terminate her employment. (Doc. 72-1, p. 36, ¶ 257). Ms. Riley-Cornutt asserts that the resulting stress and anxiety became so severe that she took medical leave. (Doc. 72-1, p. 36, ¶ 258). When she later attempted to return to work, Ms. Riley-Cornutt alleges that the work environment was intolerable, forcing her to transfer or resign. (Doc. 72-1, p. 37, ¶ 26).

Although Ms. Riley Cornutt's proposed allegations indicate that her experience with her supervisors caused her significant distress, the "severe or pervasive" prong of a harassment claim has an objective component, and Ms. Riley-Cornutt has not alleged facts that meet the objective standard. *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1335 (11th Cir. 2023) ("Showing that harassment is sufficiently severe or pervasive requires" that the employee "subjectively perceive the harassment as sufficiently severe and pervasive," and that perception must "be objectively reasonable"). With respect to frequency and severity, Ms. Riley-Cornutt's allegations concerning increased scrutiny and limited communication do not rise to the level of repeated discriminatory comments, slurs, ridicule, or abusive conduct required to meet the objective standard. *See, e.g.*, *Fortson v. Carlson*, 618 Fed. Appx. 601, 607 (11th Cir. 2015) (multiple racially explicit remarks over two-year period not severe or pervasive). The Eleventh Circuit has held that criticism, micromanagement, ostracism, and unfair treatment, without more, do not constitute the type of extreme conduct necessary to alter the terms and conditions of employment. *See Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1305 (11th Cir. 2023) (supervisors' micromanagement, excessive monitoring, solicitation of peers to report plaintiff's violations, requirement that the plaintiff perform clerical duties, and dismissal or disregard of the plaintiff's complaints of race discrimination were not sufficiently severe or pervasive); *Yelling*,

13

82 F.4th at 1335–37 (racially "heated" work environment where coworkers regularly discussed racially insensitive topics including name-calling not severe or pervasive).

Because Ms. Riley-Cornutt has not alleged discriminatory intimidation, ridicule, or insult that is, objectively, "sufficiently severe or pervasive," Ms. Riley-Cornutt's proposed Title VII hostile work environment claim is futile.

## CONCLUSION

For the reasons discussed, many of the claims that Ms. Riley-Cornutt asserts in her proposed second amended complaint are futile. Because Ms. Riley-Cornutt has added detailed factual allegations in her proposed second amended complaint, the Court will allow Ms. Riley-Cornutt to file the second amended complaint. By April 15, 2026, Ms. Riley-Cornutt shall file her proposed second amended complaint, (Doc. 72-1), as a new pleading so that the Clerk may docket a second amended complaint. The Court strikes from Ms. Riley-Cornutt's second amended complaint all claims but Ms. Riley-Cornutt's Title VII claims for race discrimination and retaliation.[5] The parties shall litigate the Title VII race discrimination and retaliation claims.

This order renders the Board's motion to dismiss Ms. Riley-Cornutt's first amended complaint moot. (Doc. 61). The parties shall submit a proposed

---

[5] The Court strikes from Ms. Riley-Cornutt's second amended complaint her Title VII hostile work environment claim and her claims against the Board under the ADA and 42 U.S.C. §§ 1981 and 1983.

scheduling order, and discovery shall proceed with respect to the second amended complaint.    The Court denies Ms. Riley-Cornutt's amended motion to reopen discovery, (Doc. 64), and finds that Docs. 72, 76, and 80 are moot.    The Clerk of Court shall please TERM Docs. 61, 64, 72, 76, and 80.

   **DONE** and **ORDERED** this April 9, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE